Good morning. Jeff Held for Appellants. In the wake of the lower court's ruling that the jail violated the Constitution by following State law, a number of horrific instances vindicating the wisdom of State Penal Code 4030G have occurred. Well, the problem with that is, of course, they're not in the record. And the reason is, Your Honor, because they postdated the ruling under illustrative post-record, illustrative instances of what has happened as a result of the district court's ruling. And I would request, if permissible, that you at least hear them, as I think the consequences of the district court's ruling are quite telling. Well, is there anything of which we might you might request that we take judicial notice? Because we're not supposed to consider things outside the record unless they're cognizable under the principles of judicial notice. Then, Your Honor, all I could request is that I be allowed to present them supplementally if it please the Court. Otherwise, I'll proceed with my argument. Well, I suppose you've always got to root for Rule 60B or whatever the number is in district court. I mean, the difficulty here, as I see it in a nutshell, is that in the district court where it mattered, there's essentially no evidence to substantiate a security concern, which is very conclusory. And so what you've basically done is in the district court leave nothing on one side of the scale. And on the other side of the scale, you've got a blanket policy that requires an intrusive search for somebody who's just under the influence. Of drugs. On a charge. Of drugs, not alcohol. I understand it being under the influence of drugs, which just seems to me is different from, for example, possession or trafficking charge, without any articulable facts suggesting that this particular person had done anything to secrete drugs in a body cavity that would not have been discovered in the course of a routine pat-down search. I mean, that sort of in a nutshell is how I see this, and I'm just having a good deal of difficulty seeing where there's even any issue, because there was just no evidence of a security concern. But, Your Honor, well to me it's more that the law clearly, the clearly established law required some kind of particularized analysis of, you know, pertaining to the individual in order to make a determination of reasonable suspicion. So any blanket policy, probably with the exception and for the reasons articulated by the Supreme Court in Bell, would seem to be reasonable under our laws. It's pretty clear. But, well, let me first address your question, Judge Wardlaw. Well, I think you should first address Judge Reimers. Okay. Judge Reimers, let me first address your question. Go ahead. Okay. I've forgotten it, so you. Okay. Go ahead. I have quoted explicitly in the brief, so I won't read them again to you here, especially because of the time constraints, that in four Ninth Circuit decisions, Giles, Thompson, Kennedy, and Fuller, it explicitly states that the search policy of the local detention facility violated the Constitution because the search policy and practice had nothing to do with drugs, weapons, or violence. Judge Hall's thoughtful opinion for the Court in Kennedy v. Los Angeles Police Department clearly said this was an ordinary squabble between two roommates about a television set. Quote, it had nothing to do with drugs, weapons, or violence. So we aren't told in any of the four Ninth Circuit decisions that govern pretrial detention facilities performing visual-only, unclothed body cavity searches by a deputy of the same gender in a closed room, we aren't told that we have to show a track record of disaster in order to justify the policy. Giles, Thompson, Kennedy, and Fuller clearly hold, and we could quote passages ad nauseum that I have in my briefs, that if the charges, if the arresting charges, which gave the arresting cause to arrest for drugs, that translates into the lower informational level of reasonable suspicion needed to perform the visual-only strip search. So we don't have any statement in these four cases, oh, you need to show a track record of disaster. We're told if it relates to drugs, weapons, or violence, you can do it. In fact, in that recent Eleventh Circuit case, Hicks v. Moore, that I cited to you, a domestic violence arrest for a slap across the face was held by the unanimous appellate panel just six weeks ago to justify a visual-only unclothed search because it had to do with violence. Judge Reimer, let me address your question, though, about the, that we need to show disastrous examples in order to take advantage of or follow the Giles, Thompson, Kennedy, and Fuller and explicitly Penal Code 4030G, which even Judge Marshall said we were following. So if that's not the law, then we have a real question. So let's separate out two questions, though, in your any, in approaching the problem, because I think it makes a difference which question we're addressing, whether we're addressing the constitutional question on the one hand or whether we're addressing the issue of qualified immunity on the other. Because as I understand, interpret the argument you just made in response to Judge Wardlaw's question, I hear that as being primarily a qualified immunity issue. So we've got now, straight up, the question of whether the blanket policy on this record is constitutional within the meaning of those four cases. I'm talking about the constitutional question. I know you're, I know you think you are. I'm just telling you for your benefit that I hear you primarily to be saying, but even if there's something wrong with this policy on this record, these officers couldn't possibly have known it because of the things we've said in these four cases. That's certainly true. That's a logical corollary of what I'm saying. But I'm saying if you're a local jail official trying to model your conduct after the Ninth Circuit and derive jurisprudential principles of law, you would read Giles, Thompson, Kennedy, and Fuller, and you would say, oh, of course they couldn't have searched because they searched all felony arrestees or all misdemeanants or everyone, but you would say these four cases held that if it dealt with drugs, weapons, or violence, you could. That's the problem. I mean, they hold what they hold. Then they basically say, but we're not concerned here with contraband drugs or a blanket policy of search when it's just for being under the influence of drugs. Let me move to your original question because it's a very valid one. I quote to you now from the leading and only United States Supreme Court decision on visual-only strip searches in pretrial detention facilities. Chief Justice Rehnquist stated that there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of inmates to secrete and import such items where the opportunity arises. And so if the policy were working as modeled on Giles, Thompson, Kennedy, Fuller, and Penal Code 4030G, you would expect it in the language of Chief Justice Rehnquist in Bell v. Wolfish to function as an adequate deterrent, which, in fact, it did. But I would also point out secondarily in response to your question that the record will bear out that at EOR 6-D, there is no evidence that an MCC inmate was involved at EOR 6-D-3, the facility sergeant Bonnie Gatling submitted a declaration in which she said that notwithstanding the security protocol, there have been instances where inmates have attempted to and managed to smuggle drugs into the facility, and she describes instances where guards have been pricked with syringes and found drugs. So I would like to respond to something else you said, too, because it intrigued me in light of the Seventh Circuit opinion in Crouchahar v. Flanagan, which is cited in my brief, because I think you mentioned denim or jeans or the pat-down frisk. Wouldn't that reveal it? And that argument was considered by the Seventh Circuit. In that case, the civil rights plaintiff was relying on the line of Tenth Circuit authority. And the Seventh Circuit in Crouchahar v. Flanagan said two things. First of all, heavy clothing like denim jeans would easily conceal a postage stamp with a dozen hits of lysergic acid diethylamide on it. Second of all, it creates an evil far worse than it solves, because instead of a quick cursory glance in a private room of just two categories of offenders by a deputy of the same gender, you would invite a much more intrusive frisk to deter the smuggling of razor blades and postage stamps with LSD hits on them. So the Seventh Circuit in Crouchahar did reject that argument, and I see the Crouchahar opinion as being better for constitutional rights, because I think society would rather have a bright line rule where two classes of arrestees are strip-searched as opposed to a vigorous pat-down search. Okay. Thank you. Thank you, Your Honor. Your argument. Mr. Bell. Thank you, Justice Roberts. May it please the Court. My name is Ernie Bell. I represent Noelle Way. She is the Pelley, the plaintiff in the underlying court, the nonmoving party. Your Honors, whatever discussion that we have today, it needs to be taken in context. I have three points to make, but two of you have already hit on the last two, so I'll zoom to the first point. This is simpler than the analysis that the two Justices have put forward so far. If Bell v. Wolfish, if you will, says that we will let you strip-search somebody or search somebody on less than probable cause if you have a logic and legitimate penological concern, the concern in this case is in this theater, just keep drugs out of the jail. The general jail population, strike that, if no one is going into the general jail population, you can't get drugs from point A to point B if you're not going there. If this is the booking cell and that's the general jail population and someone comes and they bail out and they never go there, you don't need to do this. You don't even get to that point. With regard, you know, so my first point is a matter of physics. If someone doesn't go into the general jail population this way, bailed out, didn't go there, if you don't go there, you can't bring drugs from point A to point B. Would you say that there are a number of Ninth Circuit cases out there that say that the nature of the charge could provide a reasonable suspicion for body cavity search? Giles, Thompson, Kennedy, and Fuller, I believe the exact language is reasonable suspicion may be derived from the nature of the charge, comma, their appearance and conduct, comma, and their criminal history. Now, if you were to read that as an or, I think you could pick any one of them. Logically, I think the only one you could pick by itself, I believe there is one case that says the nature of the offense by itself can give reasonable suspicion. Yes, ma'am, you're correct. But the query, the whole map to the big principle is to keep drugs out of the jail, the general jail population. If you don't go there, it doesn't even, you don't even get there. You're free. Well, that same argument would apply to a weapon, so I'm not sure that gets you anywhere, because there's no question what people who have just been booked are part of some other jail population, if not the general population. Yes, ma'am. Oh, well, this is the thing. So are you narrowing your argument to people who are arrested on a charge of being under the influence of a drug? No, ma'am. No, ma'am, I'm not. I'm simply. Why not? Because that gets you home free. It does, but, and it's the facts of this case, but if the Court wants to take a bigger philosophical view, I'm not opposed to it. It's pretty, pretty, you can make a pretty good bet that I don't want to do that. Well, very well, ma'am, let's not go there. You're the boss this morning, no doubt. Well, I've got some, you know, we've got shared bosses. No, I mean, a serious question. I mean, what you're really saying is to decide this case in your client's favor. She was just in there on an influence charge, and she wasn't part of the general population, which is what the district court really basically turned its decision on. Yes, ma'am. And so in the. Yes, ma'am. And to go back to Justice Reed, Justice Reed for the day, anyways, had asked the question about these other cases. If you look at those cases, those people were going into the general jail population and hence that's the whole point. So even if the charge alone will get you there, the charge without going into the general jail population defeats the whole point. And to get back to the Bell v. Wolfish argument, if you have a legitimate concern, you get to do this on less than probable cause. If you're not going into the general jail population, or there's not some other reason, you can go to another way. You can go to the Terry v. Ohio, you have specific articulable facts. You see a bulge or a gun. Query, are we going to, we are concerned about weapons. You get pulled up for a DOI. Is it imaginable that you would have a Derringer stored in your anus or vagina? This is, this is. We don't have to decide that issue. Yes, ma'am, you're correct. But you asked me the question. So either way you slice it, we come out a winner. And there were, we cited two cases. If you don't buy the physics argument, you're not going into the general jail population, which that's the, that's what Judge Marshall said. There was no evidence. You know, I think the thing is about your case is you have several factors. And that seems to be what our court has talked about in terms of individualized suspicion. I don't even think you, I think you don't even have to rely on just that one jail, not going into the jail population, because there can be penological concerns if you're not in the jail population based on other factors. So I think you've got a pretty good case just based on the general, what constitutes individualized suspicion, which was clearly required under the sheriff's own, well, I think under the penal code, two sections of it. I would, is there any questions? I think I should shut up and start. How do you get that out of the California penal code? Oh, well, that's, thank you. That was one of my points, and that's a rather simple one. If, I think we should start with what is the whole point of Penal Code 4030? You don't have to go very far. It doesn't say, it surely doesn't say you have to have individualized suspicion. No, ma'am, but if you'll indulge me for a few seconds. Well, that was my question, is where in the California penal code would you get a requirement for individualized suspicion? I'm, it is the intent of the legislature enacting this section to protect constitutional rights of the people of California by establishing statewide policy, strictly limiting strip and body cavity searches. The point is, this was to embolden our rights and to limit searches, and so how do you get from there to needing more than without the statute? In Foote, the Court said, no way you get there. Mr. Held distinguishes in Foote and says, oh, but in Utah, we don't have a Penal Code 4030. How can a statute designed to help your rights and limit something, how can you have less rights in Utah than you do in California? And then clearly, if you turn around and look at it, Penal Code 4030, it says, if, it says, if they're going into the general jail population. Well, query for a second. This is back to my main point. If you're not going into the general jail population, what is the point of this? Why would you strip search anybody unless, of course, under Terry v. Ohio, you saw a gun and you, you know, then I don't, I'm not making any ridiculous argument that you couldn't then, but how does 4030 get, allow them to do more than what they did before where the whole purpose was to limit it, and if, if this is supposed to, to apply to people going into the general jail population, she didn't go, how does 4030 hurt you? I initially looked at it, well, wait a minute, if I get arrested and I go there and, and my con, my charge is only 11-550, my con and appearance is like today, I'm cooperative, this, that, and the other, I have no criminal history, for, for, for, you know, for goodness sakes, how, how, how do I get strip searched here? I thought there should be a period of time to allow somebody to bail out before going to this intrusive point. And combined with the point is you're trying to keep it out of the jail, I never went there. Please tell me what is the point, and I, I, I don't make that question to you. It's, it's a rhetorical question, of course. With that, unless we have more questions, I, I, I don't have any further, further to offer. Judge Reed, you've been awfully quiet, sir. You, you sure? I think we don't have any further questions, and thank you, counsel, for your argument. Both of you, the matter just argued to be submitted. Thank you.
judges: Rymer, Wardlaw, Reed